IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EFS, Inc., *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>REGIONS BANK, as Successor in Interest )<br>by Merger to AMSOUTH BANK, )<br>)<br>Defendant. ) | Case No. 3:08-cv-1003<br>Judge Trauger |

## MEMORANDUM AND ORDER

Pending before the court are the plaintiffs' Objections to the Magistrate Judge's Discovery Order (Docket No. 38), to which the defendant has filed a response (Docket No. 40), and in support of which the plaintiffs have filed a reply (Docket No. 43). For the reasons discussed below, the Objections will be sustained in part and overruled in part.

## BACKGROUND

The plaintiffs are various individuals and entities who engaged Barry Stokes and his company, 1Point Solutions, LLC ("1Point"), to act as third-party administrators for their retirement plans. Stokes held the retirement assets in a number of fiduciary and personal accounts with defendant Regions Bank ("Regions"). Over the course of several years, Stokes stole money from the fiduciary accounts, and he and 1Point ultimately entered bankruptcy.

In this suit, the plaintiffs seek to hold Regions liable for their losses. They allege that Stokes' suspicious activity should have alerted Regions to the fact that he was misappropriating fiduciary funds. They also allege that Regions failed to employ a number of monitoring procedures that are required by federal law.

The court previously ruled on the defendant's Motion for Judgment on the Pleadings. (*See* Case No. 3:08-cv-0021, Docket No. 135.)[1] In its Memorandum, the court discussed the application of Tennessee's Uniform Fiduciaries Act ("UFA") to the plaintiffs' negligence and Tennessee Consumer Protection Act claims. The UFA provides that a bank is only liable for a fiduciary depositor's actions if the bank acts "with actual knowledge that the fiduciary is committing a breach of [fiduciary duty] . . . or with knowledge of such facts that [the bank's] action . . . amounts to bad faith." Tenn. Code Ann. §§ 35-2-107, 35-2-109. The court held that this precludes liability for the defendant's mere negligence. Instead, Regions must have acted either with knowledge of Stokes' breach or in bad faith. (Case No. 3:08-cv-0021, Docket No. 135 at 10-14.)

The court then examined what it means to act in bad faith. "[A] bad-faith act is done dishonestly." (*Id.* at 10.) More specifically, "a bank acts in bad faith if the facts and circumstances [surrounding the fiduciary's breach] are so cogent and obvious that to remain passive would amount to deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction." (*Id.* at 12 (quotation marks omitted) (alteration in original).) The court stressed that "[t]his requires more than a showing that the bank was negligent." (*Id.* at 13.) Accordingly, "the plaintiffs must show that the circumstances surrounding Stokes' and 1Point's transactions so clearly suggested a breach of fiduciary duty that Regions' failure to investigate was a conscious effort to avoid knowledge of Stokes'

---

[1] This case was previously consolidated with Case No. 3:08-cv-0021. The two cases are no longer consolidated.

2

wrongdoing." (*Id.* at 13.) "The plaintiffs cannot merely show that the defendant was negligent in not discovering Stokes' fraud or not undertaking reasonable efforts to monitor its depositors." (*Id.* at 13-14.)

While the Motion for Judgment on the Pleadings was pending, the plaintiffs filed a Motion to Compel responses to certain interrogatories and discovery requests. (Case No. 3:08-cv-0021, Docket No. 120.) That motion was referred to the Magistrate Judge, who denied it. (Docket No. 37.)

## ANALYSIS

The plaintiffs have now filed Objections to the Magistrate Judge's Order, pursuant to Federal Rule of Civil Procedure 74(a). When reviewing a Magistrate Judge's order on non-dispositive matters, the district court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 74(a).

The plaintiffs' Objections dispute the Magistrate Judge's determination that the discovery material they seek is irrelevant. Rule 26(b)(1) allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

The Magistrate Judge's Order ruled on several specific discovery requests, and the court

3

will address each of these in turn.

## I.   Request No. 16 of EFS Plaintiffs' First Discovery Requests

Request No. 16 reads as follows:

> All policy or procedures manuals of defendant in effect during 2001-2006, inclusive, (including updates and amendments thereto) that addressed account procedures and/or issues regarding the opening of accounts; "know your customer" obligations, anti-money laundering obligations; the monitoring of accounts or transactions to comply with federal law or to prevent suspicious or unlawful transactions; cash withdrawals from accounts; transfers between different accounts owned by a single customer; transfers out of accounts; overdrawn accounts; and/or the retention of documents.

The Magistrate Judge refused to compel a response to this request, finding that Regions' internal policies and procedures are irrelevant to any cause of action governed by the UFA. The Magistrate Judge reasoned that, even if the policies bear on the standard of care relevant to a common-law negligence claim, they do not bear on the bank's bad faith in handling Stokes' accounts. (Docket No. 37 at 3-4.)

The plaintiffs' main argument in favor of the relevance of Regions' internal policies is that "an important facet of defendant's misconduct was its ongoing failure to implement and follow the suspicious activity monitoring procedures that are mandated by federal law." (Docket No. 38 at 3.) They argue that, "[i]f defendant failed to [implement monitoring procedures required by law], then that failure, as a violation of federal law, would be evidence of negligence." (*Id.* at 9.) The plaintiffs further argue that "a defendant's failure to follow its own policies may be considered as evidence of negligence." (*Id.* at 8-9.)

This is a surprising line of argument, given the court's previous determination that the

4

plaintiffs cannot prove liability by "merely show[ing] that the defendant was negligent in . . . not undertaking reasonable efforts to monitor its depositors." (Case No. 3:08-cv-0021, Docket No. 135 at 13-14.) The import of that statement is that the plaintiffs cannot prevail by showing (1) that Regions' internal monitoring policies failed to comply with federal law or (2) that Regions failed to comply with its own policies. In this respect, the defendant's internal policies are irrelevant to the plaintiffs' claims.[2]

But it seems clear that Regions' internal monitoring policies are otherwise relevant, for reasons not mentioned by the parties. The plaintiffs' claims hinge on the knowledge that Regions had regarding Stokes' suspicious transactions. Regions' internal policies might provide evidence of the actions that Regions took in monitoring Stokes' accounts, which, in turn, might show the knowledge that the bank acquired during such monitoring. For example, if a particular internal monitoring procedure should have alerted Regions to a facet of Stokes' wrongdoing, and if the plaintiffs can show that Regions followed that procedure, it tends to show that Regions had knowledge of the misconduct. Accordingly, the court finds that the Magistrate Judge clearly erred in denying this discovery request on relevance grounds. The court will sustain the plaintiffs' Objections as they relate to this request.

The defendant has argued that production of these policies and procedures will create a risk that the policies will become public, jeopardizing their effectiveness. (Docket No. 37 at 3.) The defendant may, if necessary, seek a protective order before producing the materials.

---

[2] Limiting discovery in this case to documents that relate to the defendant's knowledge or bad faith will not, as the plaintiffs bizarrely suggest, prevent the plaintiffs from recovering punitive damages. (*See* Docket No. 38 at 5-6.)

## II. Interrogatory No. 6

Interrogatory No. 6 reads as follows:

> State the case name, court, court number, name of plaintiff's and defendant's counsel and current status or ultimate resolution of any other lawsuit in which defendant was alleged to have failed to monitor or discover unlawful activities in its accounts.

The Magistrate Judge refused to compel a response to this interrogatory because the information sought is irrelevant to showing liability under the UFA. (Docket No. 37 at 6.) The court agrees. This interrogatory is aimed at showing that, in other instances, Regions failed to properly monitor accounts. This only tends to show that Regions was negligent; it has no bearing on the knowledge that Regions had regarding Stokes' misconduct. Because mere negligence cannot support liability under the UFA, the information sought by the interrogatory is irrelevant to the plaintiffs' claims. The court will overrule the plaintiffs' Objections as they relate to this interrogatory.

## III. Requests No. 2, 3, 4, 5, and 6 of Plaintiffs' Second Set of Requests for Production

The Magistrate Judge described these requests:

> Requests 2, 3, 4, 5 and 6 of plaintiffs' second set of requests for production seek various documents generated in connection with a Cease & Desist Order dated October 12, 2004, between the Board of Governors of the Federal Reserve System, AmSouth Bank and AmSouth Bancorporation and minutes of meetings of the Bank's board of directors during 2001-06 that address the Bank's obligations under federal statutes or regulations to monitor or prevent suspicious activities or transactions in the Bank's accounts.

(Docket No. 37 at 7.)

The Magistrate Judge refused to compel responses to these requests because the

6

information sought is intended to show that Regions (or its predecessor in interest, AmSouth Bank) negligently failed to create sufficient monitoring procedures. (Docket No. 37 at 8.) The court agrees. As discussed above, the defendant's failure to create monitoring procedures that comply with federal law relates to mere negligence and is irrelevant to the bank's knowledge of Stokes' activities. The documents sought by these requests are thus irrelevant to liability under the UFA. The court will overrule the plaintiffs' Objections as they relate to these requests.

## IV. Requests for Admission

Finally, the Magistrate Judge described the relevant requests for admission:

> [R]equests for admissions numbered 1 through 50 . . .relate to the Deferred Prosecution Agreement filed in the U.S. District Court for the Southern District of Mississippi, the assessment of civil money penalty entered by the director of the U.S. Financial Crimes Enforcement Network, the criminal information filed by the United States in the U.S. District Court for the Southern District of Mississippi and the Cease & Desist order issued by the Board of Governors of the Federal Reserve System, all on October 12, 2004. From a review of these documents, it appears that they relate to the resolution of a claim by the Government that AmSouth Bank had failed to maintain or follow policies and procedures calculated to detect suspicious activities in the accounts of the bank, and to file required reports of such suspicious activities. These documents identify several instances in which the accounts of the bank apparently were used for fraudulent or otherwise illegal activities without detection or reporting by the bank. The activities of Barry Stokes and 1Point Solutions do not appear to be referenced in these documents.

(Docket No. 37 at 8-9 (footnotes omitted).)

The Magistrate Judge refused to compel responses to these requests because the information sought is irrelevant. (*Id.* at 10.) The court agrees. As described above, information regarding the defendant's failure to comply with federal law is relevant only to show the

7

defendant's negligence in crafting monitoring procedures. It is not relevant to show the defendant's knowledge of Stokes' activities. The court will overrule the plaintiffs' Objections as they relate to these requests.

In sum, as described above, the plaintiffs' Objections (Docket No. 38) are **SUSTAINED IN PART** and **OVERRULED IN PART**. The Objections are **SUSTAINED** as to Request No. 16 of the plaintiffs' First Discovery Requests, and the Motion to Compel (Case No. 3:08-cv-0021, Docket No. 120) is **GRANTED** as to that particular request. The defendant is directed to produce documents responsive to that request, although it may seek a protective order, if necessary, to protect the effectiveness of its internal monitoring policies and procedures. The Objections are otherwise **OVERRULED**.

It is so Ordered.

Entered this 7th day of October 2010.

_____
ALETA A. TRAUGER
United States District Judge